UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

NOV 1 9 2008

UNITED STATES OF AMERICA

v.

INDICTMENT

NO. _3:08CR-133-C_

18 U.S.C. § 2
18 U.S.C. § 201(b)(1)(A)(B) and (C)
18 U.S.C. § 201(b)(2)(A)(B) and (C)
18 U.S.C. § 371
18 U.S.C. § 641
18 U.S.C. § 666(a)(1)(A)
18 U.S.C. § 1001
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1956(h)
31 U.S.C. § 5324(a)(3)

**DANIEL RYAN PARKER (Counts 1, 2, 3, 5, 6, 7 and 10)**
**JEFFREY ALLAN MCGILL (Counts 1, 2, 4, 7 and 10)**
**RANDELL LEE ADKINS (Counts 1 and 3)**
**JAMES EDWARD BRYANT (Counts 1 and 3)**
**THOMAS DARRELL BRYANT (Counts 1 and 3)**
**CRAIG THOMAS BUSH (Counts 1 and 3)**
**GUY ALLEN CONDON (Counts 1 and 3)**
**JAMES DARRELL GRIMES (Counts 1 and 3)**
**MICHAEL DOUGLAS HARPER (Counts 1 and 3)**
**DANIEL JOSEPH MILLINER (Counts 1, 3, and 10)**
**SUSAN DIANE SMITH (Counts 1 and 3)**
**JOE DAVIS SNOOKS, JR. (Counts 1 and 3)**
**DEAN ANTHONY TOTH (Counts 1, 3, 7, 8 and 9)**
**NICOLETTE MARIE WAGES (Counts 1 and 3)**

The Grand Jury charges:

COUNT 1

1.   On or about and between November 2003 and November 19,

2008, in the Western District of Kentucky, Jefferson County,

Kentucky, and elsewhere, the defendants **DANIEL RYAN PARKER, JEFFREY**

ALLAN MCGILL, RANDELL LEE ADKINS, JAMES EDWARD BRYANT, THOMAS DARRELL BRYANT, CRAIG THOMAS BUSH, GUY ALLEN CONDON, JAMES DARRELL GRIMES, MICHAEL DOUGLAS HARPER, DANIEL JOSEPH MILLINER, SUSAN DIANE SMITH, JOE DAVIS SNOOKS, JR., DEAN ANTHONY TOTH, and NICOLETTE MARIE WAGES conspired, confederated, and agreed together with each other to embezzle, steal, and knowingly convert to their own use or the use of another money or a thing of value of the United States or any department or agency of the United States in violation of Title 18, United States Code, Section 641.

## OBJECT OF THE CONSPIRACY

2. The object of the conspiracy was to defraud the United States Department of Veterans Affairs (VA) through the participants' submission of false and fictitious claims for military service related disability benefits, and for the participants to collect disability benefits resulting from those false and fictitious claims, and to share the proceeds with and pay kickbacks to **PARKER** and **MCGILL**. To date, the conspiracy has caused a loss of nearly $1,900,000.00.

## MANNER AND MEANS OF THE CONSPIRACY

3. **PARKER** served in the United States Army from August 1989 to May 1992. **PARKER** was the National Service Office Supervisor with Disabled American Veterans Service Organization

-2-

(DAV) in Louisville, Kentucky from July 1994 through April 2008. One of **PARKER'S** responsibilities was to assist veterans in their attempt to obtain VA benefits.

4.   **MCGILL** served in the United States Navy from August 1989 to September 2003. **MCGILL** was a Veteran Service Representative with the Department of Veterans Affairs Regional Office (VARO) in Louisville, Kentucky, from July 2000 through October 1, 2008. **MCGILL'S** duties included reviewing and rating VA disability claims.

5.   It was part of the conspiracy that **ADKINS, JAMES EDWARD BRYANT, THOMAS DARRELL BRYANT, BUSH, CONDON, GRIMES, HARPER, MILLINER, SNOOKS, TOTH,** and **WAGES** ("the Veterans") are all veterans of the United States military.

6.   It was part of the conspiracy that **PARKER** and **MCGILL** recruited friends, relatives, and acquaintances who were veterans or related to veterans to file false and fraudulent disability claims with the VA.

7.   It was a part of the conspiracy that **PARKER** and **MCGILL** would either alter or counterfeit medical records in the Veterans' files to make it appear that the Veterans had service related disabilities that entitled them to disability benefits.

-3-

8.   It was a part of the conspiracy that **PARKER** and **MCGILL** would falsely backdate the Veterans' fraudulent disability claims to generate thousands of dollars in retroactive disability benefit payments.

9.   It was a part of the conspiracy that the Veterans paid **PARKER** and **MCGILL** kickbacks from the proceeds of the retroactive disability payments, often two-thirds of the retroactive payment.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objectives of the conspiracy, the defendants committed the following overt acts, among others:

### RANDELL LEE ADKINS

10.   **ADKINS** is **PARKER'S** father-in-law.  **ADKINS** served in the United States Army from May 1966 to May 1968.  On or about November 9, 2006, **ADKINS** filed a claim for VA disability benefits in Huntington, West Virginia, for medical problems, including hearing loss.  That claim was denied on or about January 27, 2007.

11.   On or about June 26, 2007, **ADKINS** signed a form appointing the DAV as his power of attorney, listing a home address in Greenup, Kentucky.  At the time, **ADKINS** actually lived in West Virginia.

-4-

12.   On or about July 9, 2007, **PARKER** sent a letter requesting that **ADKINS'** file be transferred to the Louisville VARO.

13.   On or about July 2007, **PARKER** and **MCGILL** backdated **ADKINS'** claim to falsely reflect that it was received on August 16, 2005.

14.   On or about August 10, 2007, **ADKINS** attended a hearing examination in Louisville, Kentucky.

15.   On or about August 2007, **PARKER** and **MCGILL** altered the results of **ADKINS'** hearing examination.

16.   On or about August 30, 2007, based on the fraudulent hearing examination results, the VA granted **ADKINS** service related disability for 100% bilateral hearing loss.

17.   On or about September 13, 2007, the VA paid **ADKINS** $63,795 in retroactive disability payments, calculated from August 16, 2005, the fraudulently backdated date on his claim. **ADKINS** also began receiving over $2,700 per month in fraudulent disability payments.

18.   In or around September 2007, **ADKINS** paid **PARKER** $58,750 in cash as a kickback for the fraudulent disability benefit claim.   **PARKER** later shared this kickback with **MCGILL**.

-5-

## JAMES EDWARD BRYANT

19.   **JAMES EDWARD BRYANT** served in the United States Army from April 1986 to April 1990.  On or about January 12, 2005, **JAMES EDWARD BRYANT** signed a form appointing DAV as his power of attorney.

20.   In or around January 2005, **JAMES EDWARD BRYANT** submitted a claim for disability benefits, claiming he suffered from depression and bipolar disorder, and claiming a Post Office Box in Calvert City, Kentucky, as his address.  At this time, **JAMES EDWARD BRYANT** actually lived in West Virginia.  The Post Office Box was opened on or about October 19, 2004.

21.   In or around January 2005, **PARKER** and **MCGILL** backdated **JAMES EDWARD BRYANT'S** claim to falsely reflect that it was received by the Louisville VARO on March 19, 2003.

22.   On or about March 10, 2005, the Louisville VARO requested a mental examination for **JAMES EDWARD BRYANT**.  **JAMES EDWARD BRYANT** did not show up for the examination, but **PARKER** and **MCGILL** counterfeited an examination report and placed it in **JAMES EDWARD BRYANT'S** file.

23.   On or about November 2, 2005, based on the counterfeit examination report, the VA granted **JAMES EDWARD BRYANT** 100% disability for bipolar disorder.

24.   On or about May 23, 2005, the VA paid **JAMES EDWARD BRYANT** $66,241 in retroactive disability payments, calculated from March 19, 2003, the fraudulently backdated date on his claim.  **JAMES EDWARD BRYANT** also began receiving over $2,700 per month in fraudulent disability payments.

25.   On or about June 2, 2005, **JAMES EDWARD BRYANT'S** wife withdrew $44,000 from the couple's joint savings account, the same account into which the VA retroactive disability payment was deposited.

26.   In or about June 2005, **JAMES EDWARD BRYANT** paid **PARKER** $44,000 in cash as a kickback for the fraudulent disability benefit claim.  **PARKER** later shared this kickback with **MCGILL.**

### THOMAS DARRELL BRYANT

27.   **THOMAS DARRELL BRYANT** served in the United States Army from July 1989 to July 1993.  On or about June 22, 2004, the VA received a form **THOMAS DARRELL BRYANT** signed appointing DAV as his power of attorney.  The form, however, was dated February 21, 2002.

28.   In or around June 2004, **THOMAS DARRELL BRYANT** submitted a claim for disability benefits, claiming he suffered from bipolar disorder/major depression.

-7-

29.   In or around June 2004, **PARKER** and **MCGILL** backdated **THOMAS DARRELL BRYANT'S** claim to falsely reflect that it was received by the Louisville VARO on March 15, 2002.

30.   On or about July 23, 2004, the Louisville VARO requested a mental examination for **THOMAS DARRELL BRYANT**. **THOMAS DARRELL BRYANT** did not show up for the examination, but **PARKER** and **MCGILL** counterfeited an examination report and placed it in **THOMAS DARRELL BRYANT'S** file.

31.   On August 12, 2004, based on the counterfeit examination report, the VA granted **THOMAS DARRELL BRYANT** 100% disability for bipolar disorder.

32.   On or about August 23, 2004, the VA paid **THOMAS DARRELL BRYANT** $71,168 in retroactive disability payments, calculated from March 15, 2002, the fraudulently backdated date on his claim. **THOMAS DARRELL BRYANT** also began receiving over $2,500 per month in fraudulent disability payments.

33.   On or about August 26, 2004, **THOMAS DARRELL BRYANT** deposited the VA's $71,168 retroactive disability check, and on or about August 27, 2004, **THOMAS DARRELL BRYANT** withdrew $47,450 in cash from the same account.

34.   In or about August or September 2004, **THOMAS DARRELL BRYANT** paid Parker $47,450 in cash as a kickback for the

-8-

fraudulent disability benefit claim.   **PARKER** later shared this
kickback with **MCGILL**.

### CRAIG THOMAS BUSH

35.   **BUSH** served in the United States Navy from May 1980 to
May 1985.

36.   On or about January 13, 2005, a form purportedly
bearing **BUSH'S** signature appointed DAV as his power of attorney.

37.   In or around January 2005, **BUSH** submitted a claim for
disability benefits, claiming he suffered from, among other
things, a back condition and frostbite in his lower extremities.

38.   On or about March 26, 2007, **BUSH** submitted to a
medical examination of his spine and feet.   **PARKER** and **MCGILL**
subsequently obtained **BUSH'S** medical examination report and
altered the report and placed the altered report in **BUSH'S** file.

39.   On or about March 26, 2007, based on the fraudulently
altered report, the VA granted **BUSH** 40% disability for
degenerative arthritis, lumbosacral spine, and 30% disability for
cold weather injuries to right and left lower extremities.
**MCGILL** personally rated **BUSH'S** claim.

40.   On or about April 18, 2007, the VA paid **BUSH** $26,237
in retroactive disability payments, calculated from February 16,

2005.  **BUSH** also began receiving over $1,500 per month in fraudulent disability payments.

41.  On or about May 3, 2007, **BUSH** withdrew $19,000 in cash from the same bank account he used to deposit the VA's $26,237 retroactive disability check.

42.  In or around May 2007, **BUSH** paid **MCGILL** all or most of the $19,000 in cash as a kickback for the fraudulent disability benefit claim.  **MCGILL** later shared this kickback with **PARKER**.

### GUY ALLEN CONDON

43.  **CONDON** served in the United States Navy from August 1989 to June 1993.  On or about March 4, 2005, the VA received a form bearing **CONDON'S** signature appointing DAV as **CONDON'S** power of attorney.

44.  In or around February or March 2005, **CONDON** submitted a claim for disability benefits, claiming, among other things, that he suffered hearing loss and tinnitus, and claiming a Post Office Box in LaGrange, Kentucky, as his address.  At the time, **CONDON** actually lived in Illinois.  The Post Office Box was opened on or about November 5, 2004.

45.  In or around March 2005, **PARKER** and **MCGILL** backdated **CONDON'S** claim to reflect that it was received by the Louisville VARO on September 29, 2003.

-10-

46.   On or about September 30, 2005, the Louisville VARO requested a hearing test for **CONDON**.   **CONDON** did not show up for the examination, but **PARKER** and **MCGILL** counterfeited an examination report and placed it in **CONDON'S** file.

47.   On or about November 2, 2005, based on the counterfeit examination report, the VA granted **CONDON** 50% disability for hearing loss and 10% disability for tinnitus.

48.   On or about November 10, 2005, the VA paid **CONDON** $23,336 in retroactive disability payments, calculated from September 29, 2003, the fraudulently backdated date on his claim. **CONDON** also began receiving over $950 per month in fraudulent disability benefits.

49.   On or about November 16, 2005, **CONDON** deposited the VA's $23,336 retroactive disability check.   On or about December 2, 2005, **CONDON'S** wife cashed a $9,000 check, and on or about January 21, 2006, **CONDON'S** wife withdrew $9,000 in cash.

50.   In or around December 2005 and January 2006, **CONDON** paid **MCGILL** $18,000 in cash as a kickback for the fraudulent disability benefit claim.   **MCGILL** later shared this kickback with **PARKER**.

## JAMES DARRELL GRIMES

51.   **GRIMES** served in the United States Army from August 1965 to August 1969.  On September 24, 2007, **GRIMES** signed a form appointing DAV as his power of attorney.

52.   In or around September 24, 2007, **GRIMES** submitted a claim for disability benefits, claiming he suffered from lung cancer due to Agent Orange.

53.   **GRIMES'S** VA file also contained a letter **PARKER** and **MCGILL** counterfeited.  In the letter, stamped as received by the Louisville VARO on March 31, 2006, **GRIMES** purportedly claimed that he had been diagnosed with lung cancer due to his exposure to Agent Orange, and stated his desire to apply for benefits.

54.   **GRIMES'S** file also contained private medical records that **PARKER** and **MCGILL** counterfeited that reflected that **GRIMES** received treatment for "non small cell lung cancer with brain metastases."

55.   On February 15, 2008, based on the counterfeit medical records, the VA granted **GRIMES** 100% disability for lung cancer and malignant brain metastasis.  **MCGILL** personally rated **GRIMES'S** claim.

56.   On or about March 3, 2008, the VA paid **GRIMES** $66,277 in retroactive disability payments, calculated from March 31,

2006, the date on the counterfeit letter in his file.  **GRIMES** also began receiving over $2,900 per month in fraudulent disability payments.

57.   On or about March 7, 2008, **GRIMES** deposited the VA's $66,277 retroactive disability check.  On or about March 14, 2008, **GRIMES** withdrew $44,000 in cash.

58.   **JOE DAVIS SNOOKS** was **GRIMES'S** longtime friend.  In or around March 2008, in **SNOOKS'S** basement, **GRIMES** paid **MCGILL** $44,000 in cash as a kickback for the fraudulent disability benefit claim.  **MCGILL** later shared this kickback with **PARKER**.

### MICHAEL DOUGLAS HARPER

59.   **HARPER** is **MCGILL'S** uncle.  **HARPER** served in the United States Navy from November 1976 to August 1980.

60.   In or around 2004, **HARPER** submitted a claim for disability benefits, claiming he suffered from major depression and degenerative disk disease of the lumbar spine.

61.   In or around 2004, **PARKER** and **MCGILL** counterfeited an examination report and placed it in **HARPER'S** file.

62.   Based on the counterfeit reports, on or about October 8, 2004, the VA granted **HARPER** 70% disability for major depression, and 10% disability for degenerative disk disease of the lumbar spine.

-13-

63.   On or about October 27, 2004, the VA paid **HARPER** $22,120 in retroactive disability payments, calculated from January 13, 2003, the fraudulently backdated date on his claim. **HARPER** also began receiving over $1,100 per month in fraudulent disability payments.

64.   In or around November 2004, **HARPER** paid **MCGILL** at least $10,000 in cash as a kickback for the fraudulent disability benefit claim.   **MCGILL** later shared this kickback with **PARKER**.

### DANIEL JOSEPH MILLINER

65.   **MILLINER** served in the United States Navy from June 1981 to June 1985.  On or about October 1, 2004, **MILLINER** signed a form appointing DAV as his power of attorney.

66.   In or around September or October 2004, **MILLINER** submitted a claim for disability benefits, claiming he suffered from, among other things, depression and tinnitus, and claiming a Post Office Box in Louisville, Kentucky as an address.  At the time, **MILLINER** actually lived in Indiana.  The Post Office Box was opened on or about October 1, 2004.

67.   In or around September and October 2004, **PARKER** and **MCGILL** backdated **MILLINER'S** claim to falsely reflect that it was received by the Louisville VARO on April 29, 2003.

-14-

68.   In or around and between October 2004 and March 2005, **PARKER** and **MCGILL** counterfeited a medical examination report that supported **MILLINER'S** false disability claim, and placed it in **MILLINER'S** file.

69.   On or about March 11, 2005, based on the counterfeit examination report, the VA granted **MILLINER** 100% disability for major depressive disorder and 10% disability for tinnitus.

70.   On or about March 22, 2005, the VA paid **MILLINER** $52,433 in retroactive disability payments, calculated from April 29, 2003, the fraudulently backdated date on his claim.  **MILLINER** deposited that check into his JP Morgan Chase Bank account. **MILLINER** also began receiving over $2,400 per month in fraudulent disability payments.

71.   On or about April 14, 2005, **MILLINER** withdrew $50,000 in cash from his JP Morgan Chase Bank account.

72.   On or about April 14, 2005, **MILLINER** met **PARKER** in a McDonald's restaurant in Georgetown, Indiana, and paid **PARKER** $50,000 in cash as a kickback for the fraudulent disability claim.  **PARKER** later shared this kickback with **MCGILL**.

### SUSAN DIANE SMITH

73.    **SMITH** is **PARKER'S** mother.  **SMITH** was married to WVS from 1980 to May 2007.  WVS served in the United States Air Force from October 1965 to February 1969.

74.    In late 2003, **SMITH** and **PARKER** submitted a false and fraudulent claim for disability benefits on behalf of WVS.  WVS was unaware that the claim was filed.  In the claim, WVS's address was listed as a Post Office Box in Louisville, Kentucky. At the time, WVS actually lived in West Virginia.  The Post Office Box was opened on or about December 5, 2003.

75.    In the false and fraudulent claim, **SMITH** and **PARKER** claimed that WVS suffered lung cancer as a result of exposure to Agent Orange.

76.    In or around the second half of 2003, **PARKER** and **MCGILL** backdated WVS's false and fraudulent claim to reflect that it was received by the Louisville VARO on February 1, 2002.

77.    In or around the second half of 2003, **PARKER** and **MCGILL** counterfeited a medical examination report that supported WVS's false disability claim, and placed it in WVS's file.

78.    In or around early January 2004, based on the counterfeit examination report, the VA granted WVS 100% disability for "malignant growth of the lung."

-16-

79.    On or about January 14, 2004, the VA paid WVS $53,052 in retroactive disability payments, calculated from February 1, 2002, the fraudulently backdated date on his claim.   WVS also began receiving over $2,900 per month in fraudulent disability payments.   WVS's endorsement was forged on the $53,052 VA check, and **SMITH** arranged to have the monthly disability payments direct deposited in a bank account under her control.   WVS was unaware of his disability claim and the disability benefits the VA awarded him.

80.    In or around January or February 2004, **SMITH** paid **PARKER** approximately $40,000 of the $53,052 as a kickback for the fraudulent disability benefit claim.   **PARKER** later shared this kickback with **MCGILL**.   **PARKER** and **SMITH** also shared the monthly disability payments made payable to WVS.

81.    On or about April 22, 2008, WVS was interviewed by law enforcement and stated that he had never been examined for lung cancer, that he never filed a claim for VA benefits.

### JOE DAVIS SNOOKS, JR.

82.    **SNOOKS** served in the United States Army from October 1966 to October 1968.   On or about July 15, 2006, the VA received a form **SNOOKS** signed appointing DAV as his power of attorney. The form, however, was dated May 18, 2004.

83.     In or around July 2006, **SNOOKS** submitted a claim for disability benefits, claiming he suffered from, among other things, hearing loss and tinnitus.

84.     In or around July 2006, **PARKER** and **MCGILL** backdated **SNOOKS'S** claim to falsely reflect that it was received by the Louisville VARO on May 28, 2004.

85.     On or about September 28, 2006, the VA requested a hearing examination, and on or about October 30, 2006, **SNOOKS** submitted to a hearing examination.

86.     In or around October or November 2006, **PARKER** and **MCGILL** altered the results of **SNOOKS'S** hearing examination to support **SNOOKS'S** false disability claim.

87.     On or about November 8, 2006, based on the altered hearing examination results, the VA granted **SNOOKS** 100% disability for bilateral hearing loss and 10% disability for bilateral tinnitus.

88.     On or about November 27, 2006, the VA paid **SNOOKS** $69,802 in retroactive disability payments, calculated from May 28, 2004, the fraudulently backdated date on his claim. **SNOOKS** also began receiving over $2,500 per month in fraudulent disability payments.

89.   On or about December 8, 2006, **SNOOKS'S** wife withdrew $46,000 in cash from the same bank account into which the VA's $69,802 retroactive disability check was deposited.

90.   In or around December 2006, in **SNOOKS'S** basement, **SNOOKS** paid **MCGILL** $46,000 in cash as a kickback for the fraudulent disability benefit claim.  **MCGILL** later shared this kickback with **PARKER**.

### DEAN ANTHONY TOTH

91.   **TOTH** is **PARKER'S** next door neighbor.  **TOTH** was a pilot in the United States Marine Corps from May 1992 to July 2004.  On or about April 7, 2004, three months prior to leaving the Marine Corps, **TOTH** filled out a form as part of an annual physical and answered "NO" on a question asking "have you had any of the following since your last physical exam . . . hearing loss, ringing in ears?"

92.   On or about July 23, 2004, **TOTH** filed a claim for VA disability benefits in Jackson, Mississippi, for assorted medical problems, including hearing loss.  That claim was denied on or about November 2, 2004.  **TOTH** filed an appeal, and in early 2006 **TOTH** moved to Louisville and his file was transferred to the Louisville VARO.

93.    On March 21, 2007, **TOTH** signed a form appointing DAV as his power of attorney.  On or about July 12, 2007, **PARKER**, through the DAV, requested that **TOTH** be evaluated for hearing loss.  This request was granted, and on August 10, 2007, **TOTH** submitted to a hearing examination.

94.    In or about August or September 2007, **PARKER** and **MCGILL** altered the report of **TOTH'S** hearing examination and placed the altered report in **TOTH'S** file.  Whereas the original hearing examination report stated that **TOTH'S** hearing was "within normal limits," and that **TOTH** had 100% speech recognition in each ear, the report **PARKER** and **MCGILL** altered stated that **TOTH** had "current bilateral hearing loss and tinnitus" and that **TOTH** had only 32% speech recognition in his right ear, and 6% speech recognition in his left ear.

95.    On or about October 18, 2007, based on the fraudulent hearing examination report, the VA granted **TOTH** 100% disability for bilateral hearing loss, and 10% hearing loss for tinnitus.  **MCGILL** personally reviewed and granted **TOTH'S** VA disability claim for hearing loss.

96.    On or about October 31, 2007, the VA paid **TOTH** $93,240 in retroactive disability payments, calculated from July 23, 2004, the date of his initial claim.  **TOTH** also began

-20-

receiving over $2,500 per month in fraudulent disability payments.

97.   On or about November 12, 2007, **TOTH** deposited the VA's $93,240 retroactive disability check in his National City Bank account.   On or about November 21, 2007, at approximately 1:55 p.m., **TOTH** withdrew $10,000 in cash from a National City Bank branch office.   At approximately 2:15 that same day, **TOTH** withdrew another $10,000 in cash from a different National City Bank branch office.   On or about November 26, 2007, **TOTH** withdrew another $10,000 in cash from his National City Bank account.   On or about November 27, 2007, **TOTH** purchased a $32,160 National City Bank Official Check made payable to **PARKER**.

98.   In or about November or December 2007, **TOTH** paid **PARKER** $62,160 as a kickback for the fraudulent disability benefit claim.   **PARKER** later shared this kickback with **MCGILL**.

99.   **TOTH** is currently a pilot for Southwest Airlines.   As such, he has had yearly physical examinations mandated by the United States Department of Transportation.   In each of his yearly physicals conducted in March 2006, March 2007, and March 2008, **TOTH** reported no hearing loss or problems, and passed a conversational voice test conducted at six feet.

## NICOLETTE MARIE WAGES

100.   **WAGES** is **PARKER'S** former girlfriend.  **WAGES** served in the United States Air Force from April 1990 to December 1995. In or around November or December of 2003, **WAGES** signed a form appointing DAV as her power of attorney.

101.   In or around November or December 2003, **WAGES** submitted a claim for disability benefits, claiming she suffered from bipolar disorder.

102.   On or about December 11, 2003, **PARKER** and **MCGILL** backdated **WAGES'** claim to falsely reflect that it was received by the Louisville VARO on May 14, 2002.

103.   The Louisville VARO requested a mental examination for **WAGES**, and an examination was scheduled to occur on January 26, 2004.  **WAGES** failed to report for the appointment.

104.   On or about January 26 or January 27, 2004, **PARKER** and **MCGILL** counterfeited an examination report to support **WAGES'** false disability claim and placed it in **WAGES'** file.

105.   On or about January 27, 2004, **MCGILL** personally reviewed **WAGES'** file and based on the counterfeit report, granted **WAGES** 100% disability for bipolar disorder.

106.   On February 11, 2004, the VA paid **WAGES** $46,750 in retroactive disability payments, calculated from May 14, 2002,

-22-

the fraudulently backdated date on her claim.  **WAGES** also began
receiving over $2,300 per month in fraudulent disability
payments.

107.   On or about February 18, 2004, **WAGES** withdrew $9,000
in cash from her bank account.  On that same day, **WAGES** wrote a
$7,000 check made payable to **MCGILL'S** wife.  On or about February
19, 2004, **WAGES** wrote a $7,375 check made payable to **MCGILL'S**
wife.

108.   In or around February 2004, **WAGES** paid $23,375 to
**MCGILL** as a kickback for her fraudulent disability claim.  **WAGES**
shared the remainder of her fraudulent $46,750 retroactive
disability payment with **PARKER**.

In violation of Title 18, United States Code, Section 371.


The Grand Jury further charges:

## COUNT 2

109.   On or about and between October 2005 and November 19,
2008, in the Western District of Kentucky, Jefferson County, the
defendants, **DANIEL RYAN PARKER** and **JEFFREY ALLAN MCGILL**, aided
and abetted by each other and another known to the Grand Jury,
embezzled, stole, purloined, and knowingly converted to their own
use and the use of another money belonging to the United States

-23-

of America or any department or agency of the United States of America, to wit:   **PARKER** and **MCGILL** submitted a fraudulent application for military service related disability benefits on behalf of HSP, **PARKER'S** father, to the VA, and arranged for the approval of that fraudulent application, and for the fraudulent payment of monthly disability payments.

In violation of Title 18, United States Code, Section 641.

The Grand Jury further charges:

<u>COUNT 3</u>

110.    On or about and between November 2003 and November 19, 2008, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants **DANIEL RYAN PARKER,** **RANDELL LEE ADKINS, JAMES EDWARD BRYANT, THOMAS DARRELL BRYANT,** **CRAIG THOMAS BUSH, GUY ALLEN CONDON, JAMES DARRELL GRIMES,** **MICHAEL DOUGLAS HARPER, DANIEL JOSEPH MILLINER, SUSAN DIANE** **SMITH, JOE DAVIS SNOOKS, JR., DEAN ANTHONY TOTH,** and **NICOLETTE** **MARIE WAGES,** aided and abetted by each other, directly and indirectly corruptly gave, offered and promised something of value to a public official, to wit, Jeffrey Allan McGill, a VA Veteran Service Representative, with the intent to influence an official act and to influence Jeffrey Allan McGill to commit and

-24-

aid in committing and collude in and allow any fraud on the United States, and to induce Jeffrey Allan McGill to do and omit to do any act in violation of his lawful duty, as described in paragraphs 1 through 115, which are incorporated in full.

In violation of Title 18, United States Code, Sections 2 and 201(b)(1)(A), (B) and (C).

The Grand Jury further charges:

<u>COUNT 4</u>

111.   On or about and between November 2003 and November 19, 2008, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant, **JEFFREY ALLAN MCGILL**, being a public official as defined in Title 18, United States Code, Section 201(a)(1), directly and indirectly corruptly demanded, sought, received, accepted, and agreed to receive and accept anything of value in return for being influenced to perform any official act, and in return for being influenced to commit and aid in the committing, and to collude in, and allow, any fraud on the United States, and in return for being induced to do or omit any act in violation of his official duty, as described in paragraphs 1 through 115, which are incorporated in full.

In violation of Title 18, United States Code, Section 201(b)(2)(A), (B) and (C).

The Grand Jury further charges:

## COUNT 5

112.     Between December 1, 2004, and November 30, 2005, the Disabled American Veterans Service Organization (DAV) received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, and other forms of federal assistance.

113.     On or about and between December 1, 2004, and November 30, 2005, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **DANIEL RYAN PARKER**, being an agent of the DAV, embezzled, stole, intentionally misapplied, and knowingly converted to his own use without lawful authority, monies in excess of $5,000 which belonged to, were owned by, and were under the care, custody, and control of the DAV, to wit: a $7,721.97 check dated December 9, 2004, from the Estate of S.F.K. and made payable to the DAV, and a $23,000 check, dated July 11, 2005, from the Commonwealth of Kentucky payable to the DAV.

In violation of Title 18, United States Code, Section 666(a)(1)(A).

-26-

The Grand Jury further charges:

COUNT 6

114.   Between April 1, 2006, and March 31, 2007, the Disabled American Veterans Service Organization (DAV) received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, and other forms of federal assistance.

115.   On or about and between December 1, 2004, and November 30, 2005, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **DANIEL RYAN PARKER**, being an agent of the DAV, embezzled, stole, intentionally misapplied, and knowingly converted to his own use without lawful authority, monies in excess of $5,000 which belonged to, were owned by, and were under the care, custody, and control of the DAV, to wit:  a $1,000 check, dated April 17, 2006, from C.R. payable to the DAV for an "Owensboro DAV van", and a $15,555.00 check, dated March 6, 2007, from the Marion County Chapter of the DAV payable to the DAV.

In violation of Title 18, United States Code, Section 666(a)(1)(A).

The Grand Jury further charges:

<u>COUNT 7</u>

116.    In or about and between November and December 2007, in the Western District of Kentucky, Jefferson County, Kentucky, the defendants, **DANIEL RYAN PARKER, JEFFREY ALLAN MCGILL**, and **DEAN ANTHONY TOTH**, aided and abetted by each other, knowingly conducted financial transactions affecting interstate and foreign commerce, that is **TOTH** paid **PARKER** and **MCGILL** over $60,000 in kickbacks in the form of cash and an official National City Bank check, some or all of which were derived from a specified unlawful activity, namely violation of 18 U.S.C. § 641.  **TOTH, PARKER** and **MCGILL** knew that the transaction was designed in whole or in part to conceal and disguise the location, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions **TOTH, PARKER** and **MCGILL** knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

The Grand Jury further charges:

COUNT 8

117.   On or about and between November 21 and November 26, 2007, in the Western District of Kentucky, Jefferson County, the defendant, **DEAN ANTHONY TOTH**, for the purpose of evading reporting requirements of Sections 5313(a) and 5325, structured multiple transactions with domestic financial institutions as defined by Title 31, United States Code, Section 5312(a)(2), in that **TOTH** committed the following acts:

118.   On or about November 21, 2007, **TOTH** withdrew $10,000 in cash from National City Bank, a financial institution as defined by Title 31, United States Code, Section 5312(a)(2).

119.   On or about November 21, 2007, **TOTH** withdrew another $10,000 in cash from National City Bank, a financial institution as defined by Title 31, United States Code, Section 5312(a)(2).

120.   On or about November 26, 2007, **TOTH** withdrew another $10,000 in cash from National City Bank, a financial institution as defined by Title 31, United States Code, Section 5312(a)(2).

In violation of Title 31, United States Code, Section 5324(a)(3).

The Grand Jury further charges:

### COUNT 9

121.   On or about April 22, 2008, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **DEAN ANTHONY TOTH**, did knowingly and willfully make false, fictitious and fraudulent material statements and representations, in a matter within the executive branch of the United States government, that is, **DEAN ANTHONY TOTH** did falsely respond to questions presented by agents of the United States regarding the payment of kickbacks to Daniel Ryan Parker.

In violation of Title 18, United States Code, Section 1001.


The Grand Jury further charges:

### COUNT 10

122.   On or about and between September 2004 and April 2005, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants, **DANIEL JOSEPH MILLINER, DANIEL RYAN PARKER,** and **JEFFREY ALLAN MCGILL**, knowingly combined, conspired and agreed together to commit certain offenses under 18 U.S.C. § 1956, in that the defendants agreed with each other to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful

activity, knowing that the money involved in the transactions represented the proceeds of some form of unlawful activity and also knowing that the transactions were designed, in part, to conceal and disguise the source, location, ownership, nature and control of proceeds of specified unlawful activity, that is in March 2005 **MILLINER** received $52,433 in fraudulent VA retroactive disability payments, and subsequently deposited those funds in his account with JP Morgan Chase Bank, a financial institution, and on or about April 14, 2005, **MILLINER** withdrew $50,000 in cash from JP Morgan Chase Bank and paid **PARKER** and **MCGILL** $50,000 in kickbacks, some or all of which was derived from a specified unlawful activity, namely violation of 18 U.S.C. § 641.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h).

A TRUE BILL.

⌐FOREPERSON

DAVID L. HUBER
UNITED STATES ATTORNEY

DLH:DRW:11/07/08

-31-

UNITED STATES OF AMERICA v.  **DANIEL RYAN PARKER, ET AL.**

### P E N A L T I E S

Counts 1, 8, 9:  NM 5 yrs./$250,000/both/NM 3 yrs. Supervised Release (each count)
Counts 2, 5, 6:  NM 10 yrs./$250,000/both/NM 3 yrs. Supervised Release (each count)
Counts 3, 4:   NM 15 yrs./$250,000/both/NM 3 yrs. Supervised Release (each count)
Counts 7, 10:  NM 20 yrs./$500,000/both/NM 3 yrs. Supervised Release (each count)

### N O T I C E

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

Misdemeanor:  $ 25 per count/individual     Felony:  $100 per count/individual
              $125 per count/other                   $400 per count/other

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due <u>immediately</u> unless the court issues an order requiring payment by a date certain or sets out an installment schedule.  You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court.  18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1.  **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

    For offenses occurring after December 12, 1987:

    No **INTEREST** will accrue on fines under $2,500.00.

    **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing.  This rate changes monthly.  Interest accrues from the first business day following the two week period after the date a fine is imposed.

    **PENALTIES** of:

    10% of fine balance if payment more than 30 days late.

    15% of fine balance if payment more than 90 days late.

2.  Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3.  Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

> If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

## RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law.  18 U.S.C. § 3663

## APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

   1.   That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

   2.   Give bond for payment thereof.

   18 U.S.C. § 3572(g)


## PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY  40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY  42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY  42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY  42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.

FORM DBD-34
JUN.85

No.

# UNITED STATES DISTRICT COURT
Western District of Kentucky
Louisville Division

## THE UNITED STATES OF AMERICA
vs.

DANIEL RYAN PARKER, JEFFREY ALLAN MCGILL,

RANDELL LEE ADKINS, JAMES EDWARD BRYANT,

THOMAS DARRELL BRYANT, CRAIG THOMAS BUSH

GUY ALLEN CONDON, JAMES DARRELL GRIMES,

MICHAEL DOUGLAS HARPER, DANIEL JOSEPH

MILLINER, SUSAN DIANE SMITH, JOE DAVIS

SNOOKS, JR., DEAN ANTHONY TOTH, NICOLETTE

MARIE WAGES

## INDICTMENT

**Title 18 U.S.C. §§ 371; 641; 2; 201(b)(1)(A);
201(b)(1)(B); 201(b)(1)(C); 201(b)(2)(A);
201(b)(2)(B); 201(b)(2)(C); 666(a)(1)(A);
1956(a)(1)(B)(i); 1001; 1956(h);
Title 31 U.S.C. § 5324(a)(3):
Conspiracy to Steal Government Property;
Theft of Government Property; Bribery of a
Public Official; Soliciting a Bribe; Federal
Program Fraud; Money Laundering;
Structuring Monetary Transactions; False
Statements; Conspiracy to Launder Money.**

*A true bill*

_____          _____
                                         *man*

*Filed in open court this 19*th *day, of* November A.D. 2008.

_____

                                         *Clerk*

*Bail, $*

_____