**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CRIMINAL ACTION NO. 08-133-C**

**UNITED STATES OF AMERICA,**                                                              **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**DEAN ANTHONY TOTH,**                                                                     **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the defendant's motion to suppress. R. 193, 228. For the following reasons, the motion will be **DENIED**.

**I.     Background**

The defendant, Dean Anthony Toth, was interviewed in his home by Special Agent Michael Keen of the Department of Veterans Affairs of the Office of the Inspector General and FBI Special Agent Steve Wight. Hr'g on Mot. to Suppress, Tr. 5, 45, Sep. 21, 2009 ("Tr."). Keen and Wright arrived at the Toth residence at approximately 7:28 a.m. and knocked on the kitchen door. Tr. 5, 45–46. Toth answered the door, at which point the agents identified themselves and showed him their credentials, told him that he was not under arrest, and stated that they would like to ask him a few questions. *Id*. Toth consented to being questioned and invited them into his home. *Id.* The three men proceeded to the kitchen, where Keen and Wight interviewed Toth for approximately two hours and fifteen minutes. Tr. 6. Toth now seeks to suppress statements he made to the agents

during this questioning. R. 193, 228.

At issue is whether the questioning constituted a custodial interrogation, such that suspects must be advised of their Fifth Amendment rights in order for their statements during that interrogation to be admissible at trial. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Toth argues that the questioning constituted a custodial interrogation for *Miranda* purposes, and that any statements he made are therefore inadmissible.

## II.   Analysis

The totality of the circumstances does not indicate that the interrogation was "custodial," and therefore the *Miranda* rule does not render Toth's statements inadmissible. Whether an interrogation was custodial "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). In order to determine objectively whether there was a formal arrest or restraint on freedom of the degree associated with a formal arrest, courts consider (1) the circumstances surrounding the interrogation; and (2) in light of those circumstances, whether a "reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112 (1995). Courts should consider the following factors in this

analysis:

> (1) the purpose of the questioning; (2) whether the place of questioning was hostile or coercive; (3) the length of the questioning; (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998).

Here, the purpose of the interrogation does not weigh in favor of finding that it was custodial. The fact that the agents sought more evidence which might eventually be used against Toth does not render the interrogation custodial. Rather, "any inquiry into whether the interrogating officers have focused their suspicion upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for the purposes of *Miranda*." *Stansbury,* 511 U.S. at 326. Here, the defense acknowledges that the agents did not disclose that they were gathering information about an ongoing criminal investigation of Toth. R. 228, 10. Thus the purpose of the questioning is not relevant to the instant inquiry and cannot weigh in favor of a custodial interrogation.

Similarly, the place of interrogation was not hostile or coercive, weighing against deeming this a custodial interrogation. Home interrogations are less likely to be coercive in nature than those at police stations; a suspect "is more keenly aware of his rights and more reluctant to tell of his indiscretions of criminal

behavior within the walls of his own home." *Miranda*, 384 U.S. at 449–50. One's home

> presumably is the one place where individuals feel most unrestrained in deciding whether to permit strangers into the house, in moving about once the police are there, in speaking as little or as much as they want, in curbing the scope of the interview or in simply asking the officers to leave.

*United States v. Panak*, 552 F.3d 462, 465–466 (6th Cir. 2009). Here, the agents arrived at a time when Toth and his family were awake and already moving about their home. Tr. 48, 51; R. 228, 10. Toth invited them in and directed the agents to his kitchen. Tr. 5, 17, 46. Toth's family moved about freely during the course of the questioning. Tr. 7, 48. Although Keen accompanied Toth upstairs to retrieve some documents, there is no indication that Toth was prevented from moving about his house as he pleased. Tr. 7, 23–25, 52, 58. The agents' presence would not have disrupted a reasonable person's comfort with and control over his surroundings. Thus the fact that Toth was questioned in his own home is a mitigating factor.

Other possible indicia of custody were also absent. Perhaps most importantly, the agents immediately informed Toth that he was not under arrest. *See Salvo*, 133 F.3d at 951; *Coomer v. Yukins*, 533 F.3d 447, 487 (6th Cir. 2008). Courts have consistently found this factor significant in determining whether the defendant was in custody. *Id.* at 951. In addition, the nature of the questioning is a mitigating factor. Toth acknowledges that he was respectful and

4

cooperative due to his own status as a federal officer. The agents similarly describe the exchange as cordial and cooperative. Tr. 6, 60–61. Toth argues that the broad range of questions asked was part of an attempt to disorient him. R. 228, 10. The nature of the questioning, however, indicates an absence of police domination or strong-arm tactics, which can serve as indicia of custody. *See United States v. Welch*, No. 93-4043, 1994 U.S. App. LEXIS 26574 at *14 (6th Cir. 1994); *United States v. Griffin*, 922 F.3d 1343, 1351–52 (8th Cir. 1990). Finally, Toth concedes that the length of questioning does not suggest that it was custodial in nature. R. 228, 10. Moreover, particularly where questioning has lasted only a few hours, courts have found this factor undeterminative. *See, e.g., Griffin*, 922 F.2d at 1348-49. Thus the agents' statement that Toth was not under arrest, in combination with the overall non-coercive nature of the interaction, strongly weighs against finding that the questioning constituted a custodial interrogation.

Although some factors could support finding that the interrogation was custodial, they do not provide such support in this particular case. First, the officers did not tell Toth that he was free to terminate the questioning. Although such advice frequently indicates a non-custodial setting, "[i]t would be strange . . . to say that a telltale sign of whether an individual must be Mirandized is whether the officer gave the individual one of the Miranda warnings–that [h]e need not answer the questions." *Panak*, 552 F.3d at 467. Here, the record indicates that

5

the atmosphere was cordial and cooperative, undermining the notion that Toth may not have felt able to terminate the questioning. The absence of such advice therefore does not overcome the other factors weighing against a finding of custodial interrogation. *See id.* at 468.

Secondly, the fact that Officer Keen accompanied Toth upstairs indicates a degree of restraint on Toth's ability to move about his home in the agents' presence. Tr. 23–25. That restraint does not rise to the level of formal arrest, however. Toth does not contest that when he told the agents he wanted to retrieve some documents from another room, Keen volunteered to go with him. Tr. 23. Keen did not attempt to prevent Toth from going to a different room; he merely volunteered to accompany Toth in order to ensure that Toth did not obtain a weapon or take some other action that would have endangered the agents. *Id.* at 23–25. Moreover, Toth did not voice any objection to Keen coming upstairs with him. This does not rise to the level of the type of restraint associated with a formal arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 441–42 (1994) (holding that some degree of restraint does not necessarily render an interrogation custodial); *United States v. Axsom,* 289 F.3d 496, 502 (8th Cir. 2002).

### III.    Conclusion

Overall, the totality of the circumstances indicates that the interrogation was not custodial in nature. In particular, the facts that the agents stated initially that Toth was not under arrest, that Toth invited the agents into his home, and that the

6

nature of the questioning was not coercive indicate that a reasonable person would have felt free to terminate the questioning.

Accordingly,

**IT IS ORDERED** that the motion to dismiss, R. 193, R. 228, is **DENIED.**

Signed on  December 8, 2009

**Jennifer B. Coffman, Judge**
**United States District Court**